Ed ENGLISH by and through Carol S. DAVIS, Public Administrator of Taney County, Missouri, as Guardian and Conservator of Ed English, Plaintiff–Appellant,

v.

Edward J. HERSHEWE and The Hershewe Law Firm, P.C., formerly Hershewe & Gulick, P.C., Defendants–Respondents.

No. SD 30075.

Missouri Court of Appeals,
Southern District,
Division One.

May 4, 2010.

Motion for Rehearing or Transfer Denied May 24, 2010.

Application for Transfer Denied June 29, 2010.

---

Donald E. Woody, Springfield, MO, for Appellant.

Ronald E. Mitchell, Joplin, MO, for Respondents.

JEFFREY W. BATES, Presiding Judge.

This is an appeal from a summary judgment on a legal malpractice claim granted in favor of defendant Edward Hershewe (Hershewe) and the Hershewe Law Firm, P.C. (collectively, Defendants) and against plaintiff Ed English (English), by and through his guardian and conservator, Carol Davis (Davis). Because there are genuine issues of material fact that require a trial and Defendants are not entitled to judgment as a matter of law, the judgment is reversed and the cause is remanded for further proceedings.

## I. Standard of Review

A summary judgment can only be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 74.04(c)(6); *Hitchcock v. New Prime, Inc.*, 202 S.W.3d 697, 699 (Mo.App.2006); *Lindsay v. Mazzio's Corp.*, 136 S.W.3d 915, 919 (Mo.App.2004).[1] Appellate review is *de novo*. *Wilson v. Rhodes*, 258 S.W.3d 873, 875 (Mo.App.2008). This Court uses the same criteria the trial court should have used in initially deciding whether to grant defendants' motion. *Harris v. Smith*, 250 S.W.3d 804, 806 (Mo.App.2008). Appellate review is based upon the record submitted to the trial court. *Sexton v. Omaha Property and Cas. Ins. Co.*, 231 S.W.3d 844, 845 (Mo.App.2007). That record is viewed in the light most favorable to the party against whom judgment was entered, and the nonmoving party is accorded the benefit of all inferences which may reasonably be drawn from the record. *ITT Commercial Finance Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Because summary judgment

is "an extreme and drastic remedy," we exercise great caution in affirming it because the procedure cuts off the opposing party's day in court. *Id.* at 377. Summary judgment is the undisputed right to judgment as a matter of law, not simply the absence of a fact question. *Id.* at 380. "A genuine issue of material fact" exists where the record contains competent evidence that two plausible, but contradictory, accounts of essential facts exist. *Amusement Centers, Inc. v. City of Lake Ozark*, 271 S.W.3d 18, 19 (Mo.App.2008).

As our Supreme Court explained in *ITT*, Rule 74.04 distinguishes between a motion for summary judgment filed by a "claimant" and by a "defending party." *ITT*, 854 S.W.2d at 380. Here, the Defendants were the defending parties.

> [A] "defending party" may establish a right to judgment by showing (1) facts that negate *any one* of the claimant's elements facts, (2) that the nonmovant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense.

*Id.* at 381 (italics in original); *see Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.*, 155 S.W.3d 50, 58–59 (Mo. banc 2005). "If the trial court grants summary judgment without specifying the basis upon which it was granted, we will uphold the decision if it was appropriate under any theory." *Deer Run Property Owners Ass'n v. Bedell*, 52 S.W.3d 14, 17 (Mo.App. 2001).

---

1. All references to rules are to Missouri Court Rules (2009). All references to statutes are to RSMo (2000) unless otherwise specified.

## II. Factual and Procedural Background

In October 1995, English was injured in an electrocution accident involving power lines owned by Empire District Electric Company (Empire). In June 1998, Hershewe was contacted by attorney Dan Ramsdell (Ramsdell) about taking English's case. At that time, Hershewe was representing another person also injured in the same accident. Hershewe agreed to represent English as trial counsel and co-counsel with Ramsdell.

On August 28, 1998, Hershewe sent a letter (hereinafter referred to as the prejudgment interest letter) to Empire's counsel, Gary Lentz (Lentz). The letter stated that, pursuant to the prejudgment interest statute, English would settle his claim for $2,000,000 and would leave the offer open for 61 days. Another prejudgment interest letter was sent to a different defendant in the case a month earlier by certified mail. Hershewe knew he sent Empire the prejudgment interest letter by facsimile (fax) and believed, based on office policy, that the prejudgment interest letter had also been sent by certified mail. Lentz acknowledged that he received the letter by fax, but he did not receive the letter by certified mail. Empire did not accept the offer or respond in any way to the prejudgment interest letter. In October 1998, English filed his initial petition against Empire. In his initial petition and subsequent amended petitions, English alleged that he was entitled to prejudgment interest.

At some point in the fall of 2001, Hershewe became aware of the possibility that the prejudgment interest letter had not been sent by certified mail. After searching his files, Hershewe could not find any documentation to prove the prejudgment interest letter had been sent by certified mail. On November 1, 2001, Hershewe met with English and his wife and advised them about the status of the prejudgment interest letter. According to Hershewe, he specifically discussed: (1) the implications of possibly losing prejudgment interest if the letter had not been sent by certified mail; (2) the risks of sending a second letter; (3) English's option of firing Hershewe and his firm and hiring a new attorney to represent him; and (4) the possibility that English may have a claim against him and the law firm for legal negligence. After discussing the various risks and options, English chose to retain Hershewe's representation, rely on the original prejudgment interest letter and not send a second letter.

In August 2003, Letters of Guardianship were issued for English. Rita Housman, Taney County Public Administrator, was appointed as his guardian and conservator. In January 2005, Davis succeeded Rita Housman and continues to represent English as his guardian and conservator. With respect to all matters relevant to this appeal mentioned hereinafter, English is acting by and through Davis.

In October 2005, English's case was tried to a jury. On October 18, 2005, the jury returned a verdict in English's favor for $4,000,000. At subsequent hearings held on October 31, 2005 and December 5, 2005, English argued he was entitled to prejudgment interest, although he was unable to produce evidence proving that the prejudgment interest letter had been sent by certified mail. On December 6, 2005, the trial court entered an amended judgment awarding English $3,800,000 and prejudgment interest of $2,433,353.42, which accrued from 60 days after August 28, 1998 when the original prejudgment

interest letter was sent.[2] Thereafter, Empire appealed. On April 23, 2007, this Court reversed the trial court's award of prejudgment interest, but left the underlying verdict and judgment intact. *English v. Empire Dist. Elec. Co., Inc.*, 220 S.W.3d 849, 858 (Mo.App.2007).

The parties to the appeal were required to file any motions for rehearing or applications for transfer within 15 days after the date the opinion was filed. Rule 84.17(b); Rule 83.02. On May 9, 2007, English filed a motion for rehearing and an application for transfer to the Supreme Court of Missouri.[3] The next day, Hershewe called Empire's counsel and asked whether Empire was going to file a motion for rehearing or application for transfer. Upon receiving a negative response, Hershewe said he would withdraw English's motion if he received a letter that same day from Empire's counsel confirming its intention not to file such a motion or application.[4] Empire complied, and Hershewe withdrew the motion.

Thereafter, Empire began calculating the amount of post-judgment interest that had accrued to determine the total sum necessary to satisfy the judgment. In June 2007, English signed a "Settlement Statement" prepared by Hershewe authorizing the distribution of money anticipated from Empire, including $1,931,785.53 in attorney's fees to be paid to Defendants. In August 2007, English signed and filed a "Satisfaction of Judgment" acknowledging receipt of $4,311,085.31 (the amount specified in the amended judgment plus post-judgment interest) as full and final satisfaction of the judgment in English's case against Empire.

In February 2008, English filed suit against Defendants to recover damages based upon their alleged negligence. The first amended petition alleged that Defendants were negligent in the following ways:

With respect to defendants' aforesaid prejudgment interest offer of settlement and subsequent legal pleadings and proceedings related thereto, defendants were negligent, careless, and failed to use that degree of skill and learning ordinarily used by members of their profession in one or more of the following respects:

a. Defendants failed to send the prejudgment interest offer to settle to Empire District Electric Company, Inc., by certified mail as required by § 408.040(2), R.S.Mo., 1987.

b. Defendants failed to preserve any credible evidence and/or documentation that they had sent the prejudgment interest offer to settle to Empire District Electric Company, Inc. by certified mail.

c. Defendants failed to produce evidence at the subsequent court hearing held on October 31, 2005 and/or December 5, 2005 on prejudgment interest to prove that the prejudgment interest offer of settlement was sent by certified mail.

d. Defendants failed to allege the correct statute number in their petition allegations concerning prejudgment

---

**2.** In the amended judgment, the trial court reduced the amount of the verdict by $200,000, which is the amount of a settlement English previously reached with a former defendant.

**3.** The 15th day after the opinion was May 8, 2007, which was a state holiday (Truman Day). Therefore, English's motion and application were timely filed. *See* Rule 44.01(a).

**4.** At that point, any such motion or application by Empire would have been untimely. Rule 84.17(b); Rule 83.02.

interest in that they incorrectly referred to § 408.080 rather than § 408.040(2).

e. Defendants failed to allege in their pleadings the facts which would have absolved defendants from their obligation to produce proof that the settlement offer was sent by certified mail and/or failed to allege in their pleadings the facts which, if admitted, would have constituted a binding judicial admission by Empire District Electric Company, Inc. that Ed English was entitled to prejudgment interest.

f. When defendants knew or should have known of their failure to send the prejudgment interest offer to settle to Empire District Electric Company, Inc., by certified mail, and/or their failure to maintain and/or preserve any credible evidence or documentation that the prejudgment interest offer to settle had been sent to Empire District Electric Company, Inc. by certified mail and/or their prior sending of the prejudgment interest offer to settle by facsimile transmission was insufficient, they failed to timely send a prejudgment interest offer to settle to Empire District Electric Company, Inc. by certified mail as required by Section 408.040(2), R. S.Mo., 1987.

In Defendants' answer, they asserted three affirmative defenses, which formed the basis of their motion for summary judgment filed in February 2009. In that motion, Defendants alleged that they were entitled to summary judgment as a matter of law on English's first amended petition because the uncontroverted facts established that: (1) the applicable five-year statute of limitations expired before English filed this action; (2) Defendants' actions in sending a prejudgment interest letter in August 1998 complied with applicable law at the time and, therefore, could not constitute malpractice; and (3) English abandoned any claim of malpractice against Defendants, or elected his remedy such that he cannot establish proximate cause, by settling the underlying case after the opinion by this Court.

In August 2009, a hearing on the motion was held. Thereafter, the trial court granted summary judgment in favor of Defendants. This appeal followed. Additional facts will be disclosed as necessary to address English's three points on appeal.

### III. Discussion and Decision

#### *Point I*

■ The first ground asserted in Defendants' motion for summary judgment is that the applicable statute of limitations expired before English brought this action. The parties agree that the applicable statute of limitations for legal negligence is the five-year period provided by § 516.120(4). *See Wright v. Campbell,* 277 S.W.3d 771, 777 n. 8 (Mo.App.2009); *Day v. deVries and Assoc., P.C.,* 98 S.W.3d 92, 95 (Mo. App.2003). Because the statute of limitations is an affirmative defense asserted by Defendants, they bear the burden of establishing that the statute bars English's claims. Rule 55.08; *White v. Zubres,* 222 S.W.3d 272, 274 (Mo. banc 2007). Defendants argued below that English's cause of action for legal negligence arose and the five-year statute of limitations began to run on November 1, 2001 when Hershewe advised English that he might have a claim against Defendants. Therefore, Defendants argued that the statute of limitations had expired by the time English filed his action for legal negligence in February 2008.

■ On appeal, English contends that his cause of action against Defendants did not accrue until October 2005 when the jury in the underlying personal injury action returned a verdict in excess of the $2,000,000 settlement offer in the 1998 prejudgment interest letter. This Court agrees. The version of § 408.040 in effect in 1998 authorized an award of prejudgment interest when "the amount of the judgment or order exceeds the demand for payment or offer of settlement ...." § 408.040.2 RSMo (1994).[5] In a jury-tried case, the trial court determines whether an award of prejudgment interest is authorized after the verdict is returned. *See Dalton & Marberry, P.C. v. NationsBank, N.A.*, 982 S.W.2d 231, 237–38 (Mo. banc 1998); *Boggs ex rel. Boggs v. Lay*, 164 S.W.3d 4, 25 (Mo.App.2005); *Bowan ex rel. Bowan v. Express Medical Transporters, Inc.*, 135 S.W.3d 452, 464 (Mo.App.2004). Only at that point is it possible to ascertain whether the verdict exceeds the amount of the demand for payment or offer of settlement.

■ In determining when English's cause of action accrued, § 516.100 requires, in relevant part, that "the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment...." *Id.*; *Wright*, 277 S.W.3d at 774; *see, e.g., Delp v. Doe*, 895 S.W.2d 91, 93 (Mo.App.1995) (earliest date plaintiff's damages for the loss of her personal injury action were both sustained and ascertainable was one day after the last day her action could have been refiled). "In other words, the statute of limitations begins to run when the plaintiff's right to sue arises or when the plaintiff could first successfully maintain his cause of action." *State ex rel. Gasconade County v. Jost*, 291 S.W.3d 800, 804 (Mo.App.2009); *see Murray v. Fleischhaker*, 949 S.W.2d 203, 206 (Mo.App.1997) ("[t]he test is when the plaintiff could have first successfully maintained the action"); *M & D Enterprises, Inc. v. Wolff*, 923 S.W.2d 389, 394 (Mo.App.1996) (same holding); *Modern Tractor and Supply Co. v. Leo Journagan Construction Co.*, 863 S.W.2d 949, 952 (Mo.App.1993) (similar holding).

In the case at bar, English's cause of action did not accrue until October 18, 2005, when the jury returned its verdict for $4,000,000. This was the first point in time at which anyone could determine whether English would be entitled to prejudgment interest. *See Dalton*, 982 S.W.2d at 237–38; *Boggs*, 164 S.W.3d at 25; *Bowan*, 135 S.W.3d at 464. Had the jury returned a verdict for Empire or for English in an amount less than $2,000,000, he would not have been entitled to prejudgment interest. In such event, the alleged failure to send the prejudgment interest letter by certified mail would, in fact, have caused no damage whatsoever to English. Therefore, October 18, 2005 was the earliest date that any damage resulting from Defendants' alleged negligence was both sustained and capable of ascertainment. *See* § 516.100. If English had filed suit prior to this date, the action would have been premature because he would have been unable to prove that he had sustained any damage due to Defendants' actions. *See, e.g., Cain v. Hershewe*, 760 S.W.2d 146, 149 (Mo.App.1988) (because plaintiff could not presently prove any damages flowing from the defendants' professional negligence, his suit against these

---

**5.** This statute was substantially amended in 2005. *See* § 408.040 RSMo Cum.Supp. (2005).

defendants is premature); *Eddleman v. Dowd,* 648 S.W.2d 632, 633–34 (Mo.App. 1983) (affirming dismissal of a legal malpractice case because the underlying personal injury case was still pending and therefore plaintiff could not prove any damage); *see also Bray v. Brooks,* 41 S.W.3d 7, 15–16 (Mo.App.2001). The action that English filed against Defendants was brought well within the applicable five-year statute of limitations. § 516.120(4). Accordingly, the trial court erred in granting summary judgment to Defendants on this ground. Point I is granted.

## Point II ·

■ Elements of an action for legal malpractice are: (1) an attorney-client relationship; (2) negligence or breach of contract by the defendant; (3) proximate causation; and (4) damages. *Patterson v. Warten, Fisher, Lee & Brown, L.L.C.,* 260 S.W.3d 417, 419 (Mo.App.2008). "To establish that an attorney was negligent, a plaintiff must show that he failed to exercise that degree of skill and diligence ordinarily used under the same or similar circumstances by members of the legal profession." *Thiel v. Miller,* 164 S.W.3d 76, 82 (Mo.App.2005); *Steward v. Goetz,* 945 S.W.2d 520, 531 (Mo.App.1997). The second ground asserted by Defendants for summary judgment is that, as a matter of law, Hershewe's act of sending the prejudgment interest letter by fax on August 28, 1998 cannot constitute legal malpractice because it complied with applicable law at that time.

This assertion requires a brief overview of the applicable law concerning the recovery of prejudgment interest pursuant to § 408.040.2 RSMo (1994). In 1998, that subsection of the statute stated:

> In tort actions, if a claimant has made a demand for payment of a claim or an offer of settlement of a claim, to the party, parties or their representatives and the amount of the judgment or order exceeds the demand for payment or offer of settlement, prejudgment interest, at the rate specified in subsection 1 of this section, shall be calculated from a date sixty days after the demand or offer was made, or from the date the demand or offer was rejected without counter offer, whichever is earlier. Any such demand or offer shall be made in writing and *sent by certified mail* and shall be left open for sixty days unless rejected earlier. Nothing contained herein shall limit the right of a claimant, in actions other than tort actions, to recover prejudgment interest as otherwise provided by law or contract.

*Id.* (emphasis added).[6] Thus, the plain language of the statute required the prejudgment interest letter to be sent by certified mail. In *Larabee v. Washington,* 793 S.W.2d 357 (Mo.App.1990), however, the western district of this Court had held that certified mail was not required where the opposing party did not deny receiving the prejudgment interest letter or taking action based upon the letter. *Id.* at 361. *Larabee* was good law on August 28, 1998, when English's prejudgment interest letter was sent. Only 25 days later, however, *Larabee* was overruled by our Supreme Court in *Emery v. Wal–Mart Stores, Inc.,* 976 S.W.2d 439, 449–50 (Mo. banc 1998). The Court held that "Section 408.040.2 is clear and requires certified mail. Since plaintiff's letter was not sent by certified mail, the trial court correctly denied pre-

---

6. The 2005 amendment to § 408.040 retained the certified mail requirement and specifies that the offer "[b]e in writing and sent by certified mail return receipt requested[.]" § 408.040.2(1) RSMo Cum.Supp. (2005).

judgment interest." *Id.* at 449. The Court explained that "[t]he requirement for certified mail helps ensure that the recipient is made aware that the statute is being invoked to overcome the general rule against prejudgment interest. The certified mail requirement also helps minimize disputes as to whether, and on what date, the offer was, in fact, received." *Id.* In the underlying personal injury action appeal, this Court relied on *Emery* and held that English was not entitled to prejudgment interest because: (1) he was unable to prove that the letter containing his settlement offer had been sent to Empire by certified mail; and (2) the pleadings did not contain sufficient facts or judicial admissions to relieve English of the obligation of proving that fact. *English v. Empire Dist. Elec. Co., Inc.*, 220 S.W.3d 849, 857–58 (Mo.App.2007).

Relying only on *Larabee*, Defendants argued below that they were entitled to summary judgment as a matter of law because "sending the August 28, 1998 prejudgment interest letter by fax (whether or not it was also sent by certified mail) to Empire District cannot be malpractice, as they satisfied the law in effect at the time to invoke the prejudgment interest statute." The trial court agreed with that argument. On appeal, English contends the trial court's ruling was erroneous because there are genuine issues of material fact that require a trial to resolve. This Court agrees. One specification of negligence alleged in English's first amended petition was that "Defendants failed to preserve any credible evidence and/or documentation that they had sent the prejudgment interest offer to settle to Empire District Electric Company, Inc. by certified mail." Viewing the record in the light most favorable to English, there was evidence to

support that allegation. In July 1998, Defendants sent another prejudgment interest letter by certified mail to a different defendant in the case. In Hershewe's deposition, he testified that he believed English's prejudgment interest letter to Empire had been sent by certified mail, as well as by fax. Defendants continue to make that assertion on appeal.[7] Based upon this evidence, one reasonable inference a jury could draw is that English's letter to Empire was sent by certified mail, but the evidence necessary to prove that fact was misplaced or lost by Defendants. That factual issue requires a trial to resolve.

The trial court's ruling was erroneous for another reason as well. The ruling below was based upon the implicit premises that: (1) Defendants sent English's prejudgment letter to Empire only by fax; and (2) in doing so, Defendants intended to rely upon *Larabee*. Based upon the evidence summarized above, there is a genuine issue of material fact concerning whether Defendants ever intended to rely upon *Larabee* at all. It is well settled that "[s]ummary judgment is particularly inappropriate when the underlying issue is one of state of mind, motivation, intent or some other subjective fact." *Barekman v. City of Republic*, 232 S.W.3d 675, 682 (Mo.App. 2007). Moreover, assuming Defendants did intend to rely upon *Larabee*, that decision was overruled in *Emery* only 25 days after the English prejudgment interest letter had been sent. At that point, no prudent lawyer could rely upon *Larabee* when seeking prejudgment interest. *See, e.g., Emery v. Carnahan*, 88 S.W.3d 138, 142 (Mo.App.2002) (reliance on *Larabee* misplaced; attorney's failure to send settlement offer to opposing party via certified mail in personal injury action supported

---

**7.** As their brief states, "[i]t is [Defendants'] contention and belief that the August 28, 1998 correspondence to Empire District was also sent by certified mail."

claim for legal malpractice). Viewing the record in the light most favorable to English, a jury could reasonably infer that *Emery v. Wal–Mart Stores, Inc.,* 976 S.W.2d 439, 449–50 (Mo. banc 1998), required Defendants, as prudent attorneys, to send another settlement offer letter to Empire by certified mail in order to be able to claim prejudgment interest. Doing so would have preserved English's potential right to recover prejudgment interest for nearly all of the seven-year time period that elapsed between English's first settlement offer and the trial. Because genuine issues of material fact exist that require a trial, the trial court erred by granting summary judgment on this ground as well. Point II is granted.

### Point III

■ The third ground asserted by Defendants for summary judgment is that English abandoned any claim of malpractice, or elected his remedy such that he cannot establish proximate cause, by settling the underlying case after the opinion by this Court. As with all affirmative defenses and avoidances, Defendants bore the burden of proving English's abandonment or election of remedies barred his legal negligence claim. *See* Rule 55.08. Viewing the record in the light most favorable to English, the following facts are necessary to discuss this point.

Hershewe recommended that English file his motion for rehearing or application for transfer only because Hershewe believed Empire would file such a motion or application, and English's own filing was necessary to protect his interests. Upon learning Empire was not going to file its own motion or application, Hershewe withdrew English's motion and application. Hershewe testified in his deposition that he did so because English was in great danger of having his $3,800,000 judgment

reversed by the Supreme Court if transfer occurred. Co-counsel Ramsdell was similarly concerned that, if English continued to appeal the prejudgment interest issue by pursuing his own motion for rehearing and application for transfer, he could lose the whole case. According to Ramsdell, he highly recommended that Hershewe not pursue further review of the case for that reason. In addition, the attorney representing Davis, Matt Trokey (Trokey), was also concerned about further review. Although Trokey was not consulted prior to withdrawal of English's motion and application, he agreed that withdrawal was necessary for English to avoid the considerable risk of losing his judgment by further appeal. According to Trokey, both Ramsdell and Hershewe indicated to him after the appeal that they were not going to get prejudgment interest back from the Supreme Court.

Below, Defendants argued that Hershewe's agreement to withdraw English's motion and application if Empire agreed not to file anything amounted to a settlement of the underlying case, thereby depriving Defendants of the opportunity to preserve and review the issue of prejudgment interest in the Supreme Court. On appeal, English argues the trial court erred in granting summary judgment on this ground because Hershewe did not settle the underlying case with Empire. Once again, this Court agrees with English.

Defendants' assertion that the withdrawal of English's motion for rehearing and application for transfer amounted to a settlement is specious. This Court's opinion in English's personal injury action was handed down on April 23, 2007. Empire had until May 9, 2007, to file a motion for rehearing and/or application for transfer. Rule 84.17(b); Rule 83.02; Rule 44.01(a); *see State v. Fields,* 538 S.W.2d 348, 351

(Mo.App.1976) (striking an untimely motion for rehearing and application for transfer because the mandatory 15–day time period was not met); *Adams v. White,* 488 S.W.2d 289, 294 (Mo.App.1972) (same holding). When Hershewe contacted Empire on May 10, 2007, it was already too late for Empire to file its own motion, so Hershewe received nothing in exchange for his withdrawal of English's motion and application. Viewed most favorably to English, the evidence supports the reasonable inference that his motion and application were filed only to protect his own interests in the event Empire filed something, which it did not do. Once that became evident, Hershewe withdrew English's motion and application because of a serious risk that a further appeal would place the entire judgment at risk. All English received was what he was entitled to get in order to satisfy the judgment: the principal amount of the judgment, plus accrued post-judgment interest. There was no settlement with Empire after the appeal. Therefore, Defendants' argument that English abandoned his malpractice claim or elected a remedy has no merit. The trial court erred in granting summary judgment on this ground. Point III is granted.

For all these reasons, the trial court erred in granting summary judgment for Defendants. The judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

LYNCH, J., and THOMPSON, J., Concur.